## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SCC KYLE PARTNERS, LTD** | § | **Case No.  12-11978-hcm** |
| | § | |
| Debtor. | § | |
| | § | |

## DEBTOR'S PROPOSED DISCLOSURE STATEMENT
## FOR DEBTOR'S PLAN OF REORGANIZATION

## IMPORTANT DATES

Date by which Ballots must be received:_____, **at 5:00 p.m.** (Prevailing Central Time)

Date by which Objections to Confirmation of the Plan must be filed and served _____, **at 5:00 p.m.** (Prevailing Central Time)

Hearing on confirmation of the Plan: _____, **at _____ a.m./p.m.** (Prevailing Central Time)

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19679350
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

Dated:  November 29, 2012.          **ATTORNEYS FOR SCC KYLE PARTNERS, LTD., DEBTOR IN POSSESSION**

## IMPORTANT NOTICE

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE CURRENT EXPECTATIONS OF THE DEBTOR AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTOR OR THE REORGANIZED DEBTOR'S BUSINESS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS INDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW UNDER THE CAPTION "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NEITHER THE DEBTOR NOR THE REORGANIZED DEBTOR UNDERTAKE ANY OBLIGATIONS TO UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.**

**NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT, WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED, EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR AND ITS INTERNAL ACCOUNTING STAFF, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. THE DEBTOR'S PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN IN ITS ENTIRETY PRIOR TO VOTING ON IT.**

THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE INTEREST HOLDERS OR CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS OR INTERESTS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

# ARTICLE 1.
# INTRODUCTION

This Disclosure Statement is submitted by SCC Kyle Partners, Ltd. (the "Debtor"), the chapter 11 debtor-in-possession in the above-captioned Case, in connection with the Debtor's efforts to solicit votes necessary to confirm the Debtor's Plan of Reorganization (the "Plan"). A copy of the Plan is included with the materials supplied in the packet you have received.

## 1.01    Filing of the Debtor's Chapter 11 Case

On August 31, 2012 (the "Petition Date" or the "Filing Date"), Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court" or "Bankruptcy Court"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan are filed on behalf of the Debtor.

## 1.02    Purpose of Disclosure Statement

The purpose of this Disclosure Statement is to provide you, as the holder of a Claim against the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to vote to accept or reject the Plan.[1]

On _____, after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the holders of Claims against the Debtor to make an informed judgment to accept or reject the Plan (A copy of the *Order Pursuant to 11 U.S.C. §1125, and FED. R. BANKR. P. 3017 Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* [Docket No. _____] is included in the packet you have received. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THIS INFORMATION OR THE BANKRUPTCY COURT'S ENDORSEMENT OF THE PLAN.**

You should read all of this Disclosure Statement before voting on the Plan. **HOWEVER, THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN ITSELF BY EACH HOLDER OF A CLAIM OR INTEREST. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF THE PLAN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.**

---

[1] Capitalized terms that are not defined in the Disclosure Statement are defined in the Plan.

You are urged to consult with your own financial and other advisors in deciding whether to vote to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

About this Disclosure Statement:

•       The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

•       Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (b) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (c) "including" means "including, without limitation."

•       Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first appear within this Disclosure Statement. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan. Any capitalized term not defined in the context of a provision or in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.

•       You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of Claims or interests.

•       Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have been accurate and financial projections that may be materially different from actual future experiences.

•       Acceptance or rejection of the Plan is subject to a number of risks. See "Risk Factors" at Section 9 of this Disclosure Statement.

## 1.03    **Plan Balloting and Confirmation Procedures**

### 1.03.01        *Holder of Claims and Interests Entitled to Vote*

Only Classes of Claims and interests that are (i) "impaired" by a plan of reorganization or liquidation and (ii) entitled to receive a distribution under such a plan are entitled to vote to accept or reject a plan under the Bankruptcy Code. In this case, only holders of Claims in Class

2

3, Class 4, and Class 5 are impaired, or possibly impaired, by the Plan and entitled to vote to accept or reject the Plan. Claims in Class 1 and Class 2 are unimpaired by the Plan, and the holders thereof are conclusively presumed to have accepted the Plan.

### 1.03.02 *Voting Procedures*

If you are entitled to vote to accept or reject the Plan, a Ballot (the "Ballot") for acceptance or rejection of the Plan and a pre-addressed envelope for return of the Ballot are enclosed. BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3, 4 and 5 7 AND, BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. If you are the holder of a Claim in one of these Classes and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

Eric J. Taube
Mark C. Taylor
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan, then return the Ballot to the Debtor's counsel, at the address set forth on the Ballot, in the enclosed, postage paid, return envelope by **5:00 p.m.**, (Prevailing Central Time) on _____. Any Ballot not indicating an acceptance or rejection will be deemed an acceptance of the Plan. You may also return your Ballot by courier or fax by following the instructions on the Ballot. **ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER 5:00 P.M., PREVAILING CENTRAL TIME, ON _____, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

### 1.03.03 *Voting Requirements for Class Acceptance of the Plan*

YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. In order for the Plan to be "accepted" by Creditors and interest holders, at least sixty-six and two-thirds percent (66.66%) in amount of Allowed Claims and more than fifty percent (50%) in number of Allowed Claims voting in each Class must accept the Plan. By not voting, a Creditor favoring acceptance of the Plan jeopardizes confirmation.

### 1.03.04 *Confirmation Hearing*

The Bankruptcy Court has entered an order fixing _____, at ____ a.m./p.m. (Prevailing Central Time), Bankruptcy Courtroom for the Hon. H. Christopher Mott,

903 San Jacinto, Austin, Texas as the date, time and place for the initial commencement of a hearing on confirmation of the Plan, and fixing _____ at **5:00 p.m.**, (Prevailing Central Time), as the time by which all objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on counsel for the Debtor. The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned time and date at the confirmation hearing or any adjournment thereof.

Section 1128(a) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by the objecting party against the Debtor's Estate, the basis for the objection and the specific grounds thereof. The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with copies served upon the following and upon the Limited Service list in this case:

Eric J. Taube

Mark C. Taylor

HOHMANN, TAUBE & SUMMERS, L.L.P.

100 Congress Avenue, 18th Floor

Austin, Texas 78701

**UNLESS AN OBJECTION IS TIMELY AND PROPERLY SERVED AND FILED BY _____, AT 5:00 P.M. (PREVAILING CENTRAL TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**ARTICLE 2.**
**DEBTOR'S BACKGROUND AND FINANCIAL PICTURE**

2.01 **General**

Debtor is a Texas limited partnership whose general partner is SCC Kyle Partners GP, LLC. The limited partners are Scott Deskins, J. Kelly Shaw, Adam T. Love and Kyle investment Group, LLC.

2.02 **History of Debtor and Causes of Bankruptcy Filing**

The Debtor was formed on September 24, 2007, for the purposes to acquire, develop, sell, lease or operate a 147-acre tract of land in Kyle, Texas, to be called the "Village at Kyle" (the "Property"). The Debtor purchased the Property for $27,000,000.00, financed by a loan from several lenders, with Whitney Bank acting as Agent for all lenders. The total of the approved financing was $58,360,000.00, which was to cover development costs for the Property as well.

Following the purchase, the Debtor developed the Property, including providing land work, utilities, drainage and road improvements, along with other physical and legal development typically associated with commercial real estate. The Property was platted, and has been re-platted from time-to-time after property sales. The Debtor has been successful in

selling portions of the Property since 2008, including sales to Lowe's Home Centers, Inc., International Bank of Commerce, Broadway National Bank, Halle Properties (where a Discount Tire Center was built), and Randolph Brooks Federal Credit Union. Debtor has also sold tracts to affiliates, including a sale to SCC Kyle Drug Store, Ltd. (for use by Walgreens) and SCC Kyle Lot 1-J Ltd. (where a retail strip center has been developed). The Debtor has also donated portions of the Property to the City of Kyle or Hays County, consisting of a detention pond, , roads and other common area property. Most recently, in July 2012, the Debtor sold a 17.6670 acre tract to Wal-Mart Real Estate Business Trust.

Additionally, the Debtor is a party to certain economic incentive agreements with Hays County and the City of Kyle (the "Incentive Agreements"). These agreements provide for a refund of a portion of the sales taxes collected by the City of Kyle and Hays County for any retail activity of the original Property. This currently generates approximately $30,000.00 per quarter for the Debtor. As more retail stores are built, this amount will increase.

Though the Debtor has been successful in developing the Property and selling significant portions, Whitney Bank, as Agent, has declined to extend the maturity of the indebtedness and to fund further development. Whitney Bank ceased advancing funds on or about August 1, 2009. Though the Debtor and Whitney Bank engaged in a series of negotiations, Whitney Bank posted the remaining portions of the Property for foreclosure to be conducted on September 4, 2012 shortly after the payment of approximately $5,000,000 to Whitney in connection with the Wal-Mart sale transaction. The Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code on August 31, 2012.

## ARTICLE 3.
## SELECTED FINANCIAL INFORMATION,
## PROJECTIONS AND VALUATION ANALYSIS

### 3.01  General

This section provides summary financial information concerning the Debtor, its assets and potential sources of recovery for creditors. The information is based on information available as of the date of this Disclosure Statement. Any forward-looking projections, including analysis and valuation of Litigation Claims, is based upon the Debtor's best estimates and belief but, as with any projections, may vary in the future.

### 3.02  Operating Performance

The Debtor's most recent Monthly Operating Report is attached as Exhibit "A." The Debtor's cash flow consists of the sales tax rebates discussed above.

### 3.03  Financial Projections of the Reorganized Debtor

Attached as Exhibit "B" are projections for sales, income and expenses for the next 5 years. These are based on the Debtor's historical sales, and take into account the expected impact of the development of the Wal-Mart store and the generation of additional revenues under the Incentive Agreements, as well as anticipated sales that are already under  contract. .

3.04    **Valuation and Description of Debtor's Assets**

The Debtor has obtained an appraisal from The Aegis Group, Inc., a property appraisal company located in Austin, Texas. The appraisal was performed by John Coleman, who holds the MAI designation. The value of the remaining 50.3704 acres as of August 18, 2012 was estimated to be $18,400,000 on an as-is, bulk sale basis with a 12-month exposure period. Because this valuation was done on a "bulk sale" basis, the Debtor believes it can achieve higher sales value through orderly sales.

The Debtor's other assets consist of the Incentive Agreements identified above. These Agreements run through 2025, and will continue to generate regular income to the Debtor. The Debtor estimates that after development of the Wal-Mart, the annual revenues will exceed $250,000.

The Debtor currently has other sales pending, subject to approval by the Bankruptcy Court. These include a sale of a .75 acre pad site to Bridgestone for $845,000, and a 3.2-acre tract to Avail Healthcare for $1,533,312. Debtor intends to retain a sufficient amount to hold as an interest reserve for one year's interest plus a contingency reserve. The balance of net sales proceeds from these sales will be paid to the Lender.

## ARTICLE 4.
## PROCEEDINGS IN THE CHAPTER 11 CASE

4.01    **Commencement and Administration of the Case**

The Debtor's Chapter 11 Case was commenced on August 31, 2012.. The following is a description of the more significant matters to have come before the Court.

   4.01.01    *Approval of Employment of Hohmann, Taube & Summers, LLP as Debtor's Counsel*

Taube & Summers, LLP as counsel for the Chapter 11 Debtor. As counsel for the Debtor, the firm is entitled to seek interim and final compensation from the Estate of Debtor upon duly noticed application and after a hearing before the Court.

   4.01.02    *Property Sales*

As discussed above, the Debtor has entered contracts to sell property to Bridgestone and to Avail Healthcare, which will generate over $2 million to reduce the Debtor's secured debt.

   4.01.03    *Cash Collateral*

On November 15, 2012, the Debtor filed a Motion to Use Cash Collateral, seeking authorization to use a portion of the sales tax rebates to pay ordinary operating expenses to assist the Debtor's reorganization efforts.

## ARTICLE 5.
## SUMMARY OF THE DEBTOR'S PLAN

5.01    **Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, the plan proponent attempts to restructure a debtor's financial affairs or effectively liquidate the debtor's assets for the benefit of the creditors, equity interest holders and other parties in interest. The Chapter 11 plan is the debtor's agreement with its creditors containing the terms and conditions for the operation and/or liquidation of the properties and assets of the debtor and the treatment of the Claims and interests of creditors and parties-in-interest.

According to Section 1125 of the Code, acceptances of a Chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder.

5.02    **Terms of the Plan Control**

The following represents the Debtor's best efforts to describe the treatment afforded the Claims of the Creditors in various Classes. Creditors should be aware that the terms of the Plan control the treatment of all Claims. In the event of any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan shall be, in all events, determinative. The Debtor urges all Creditors to read the Plan for a complete understanding of the treatment of their Claims.

5.03    **Classification and Treatment**

5.1     Class I – Administrative Claims. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one(1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the

7

Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is not impaired.

5.1.2    Class II – Priority Tax Claims. Each holder of a Class II Priority Tax Claim shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest, in equal monthly payments beginning sixty (60) days from the Effective Date for the number of months remaining from such start date until the date which is sixty (60) months form the Effective Date; provided, however, that as portions of the remaining Property are sold, the outstanding taxes will be paid at closing. To the extent Debtor is liable for any such amounts, the Debtor will not be discharged from liability but shall not be required to make payments unless the amount(s) are not paid by the affiliated entities, if any. Class II is unimpaired.

5.1.3    Class III – Secured Claim of Lenders. Class III – Secured Claim of Lender. The secured claim of the Lender group will be paid over 5 years from the Effective Date from cash proceeds on hand at the time of confirmation and ongoing sales of the remaining Property, with interest-only payments to be made quarterly beginning on the 30th day after the Effective Date at 4% per annum. Net proceeds from the sale of portions of the Property, above a rolling reserve for one year's interest, insurance, taxes and a contingency reserve will be paid to the Lender at the closing of such sales. All remaining principal, interest and costs will be due and payable on the 15th day of the 60th month from the Effective Date. This Class is impaired. As of the Petition Date, the amount owed to this Class was $13,793,058.37.

5.1.4    Class IV – General Unsecured Creditors. Holders of General Unsecured Claims will receive payment of their claims, in full, in equal quarterly payments beginning ninety (90) days from the Effective Date and continuing for 16 quarters. The source of the payments will be the revenue received from the Incentive Agreements above amounts necessary for the Debtor's business operations.. This Class is impaired. Unsecured Claims total $506,464.06.

5.1.5    Class V – Subordinated Claims. This class consists of any claims held by insiders or affiliates of the Debtor. Holders of Subordinated Claims will retain their claims, but shall not receive any payment until senior classes are paid in full, after which holders of Subordinated Claims will be paid *pari passeu* on a pro-rata basis from sales of remaining Property and any revenues from the Incentive Agreements above amounts necessary for the Debtor's business operations. This Class is impaired.

5.1.6    Class VI – Equity Interests. Holders of Equity Interests in the Debtor shall retain their interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full. This Class is impaired.

8

5.2    Payments to U.S. Trustee.  Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) so long as the Bankruptcy Case remains open

### 5.2.01    *Discharge of Claims*

The rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code.  Upon  confirmation of the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. All holders of Claims or Equity Interest shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest.  Upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor.  In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

### 5.2.02    *Plan Releases and Exculpation*

None of the Debtor, Reorganized Debtor, its counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities.  No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, the Reorganized Debtor, or its counsel for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

9

# ARTICLE 6.
## IMPLEMENTATION OF PLAN

### 6.01   Summary of Implementation of the Plan

All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from the net proceeds of sales of the remaining Property, projected to be well in excess of the secured debt, and receipts from the Incentive Agreements.

### 6.02   The Reorganized Debtor's Obligations Under the Plan.

The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)   administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)   reconcile Claims and resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)   make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)   administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)   exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)   invest any Cash pending Distribution;

(7)   file appropriate tax returns; and

(8)   take such other actions as may be necessary or appropriate to effectuate this Plan.

On the Effective Date, Debtor will be managed though the General Partner, and it is anticipated that Scott Deskins will be President of the General Partner and will be responsible for the management of the post-confirmation Debtor. Following the Effective Date the Debtor may pay its post Effective Date operating expenses in the ordinary course of its business without notice or orders of this Court.

6.03    **Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax.

6.04    **Claims Objections**

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.  . *Debtor reserves the right to object to or seek estimation of any claims.*

6.05    **Contingent Claims**

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

6.06    **Distributions on Allowance or Disallowance of Disputed Claims**

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan.  If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

6.07    **Undeliverable/Returned Distributions**

Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the

address set forth on the Debtor's schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

6.08    **De Minimis Distributions**

Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00). Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held for the account of and future distribution to the holder of such Allowed Claim.

6.09    **Additional Charges**

Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

6.10    **Treatment of Executory Contracts and Unexpired Leases**

(a)    **Assumption or Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on the Plan at Exhibit A thereto (as such list may be amended, supplemented or modified on or before the Confirmation Date) or (b) subject to a motion to reject that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed in the exhibit to be provided at the confirmation hearing hereto (as such list may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(b)    **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and

12

conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is Filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

(c)     **Payments Related to Assumption of Executory Contracts and Unexpired Leases.** Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(d)     **Bar Date for Rejection Damages.** If the rejection of an executory contract or unexpired lease pursuant to Article 6 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is a Allowed Claim, shall be classified in Class 3; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against a Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

6.11   **Pending Claims and Causes of Action**

The following is a general discussion of the type and nature of claims and causes of action of the Estate:

13

NOTE: THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE ESTATE.

Some of the payments made by the Debtor to creditors within ninety (90) days of the filing of bankruptcy (or to an insider within one year of the filing of bankruptcy) may be subject to a claim for recovery as preferential transfers under 11 U.S.C. §547.

While the Debtor is unaware of any recoverable preferential transfers at this time, the Reorganized Debtor will retain the right to object to claims pursuant to 11 U.S.C. § 502(d) or pursue any preferences.

**ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED AND TRANSFERRED TO REORGANIZED DEBTOR UNDER THE PLAN.**

Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate to be conveyed to Reorganized Debtor in accordance with the Plan. The Court shall retain jurisdiction to determine all such causes of action.

**YOU MAY BE SUED IF:**

i)  You were or are a creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date;

ii)  You were an insider of the Debtor and you received a payment on a prior debt within one (1) year before the Petition Date;

iii)  You received any payments or property from the Debtor for goods or services you did not deliver or provide before the Petition Date;

iv)  You received any payments of property from the Debtor without providing reasonably equivalent value;

v)  You received pre-payments, advances or deposits from the Debtor which you did not earn;

vii)  You were involved in pending litigation with the Debtor at the time of the Petition Date or have been sued thereafter;

viii)  You owe the Debtor any money under a contract or as a result of your breach of contract with the Debtor;

ix)  Potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement; or

x)  The Debtor has any claims against you under state or federal law, whether in contract or in tort, whether known or unknown.

14

## ARTICLE 7.
## CONFIRMATION OF THE PLAN

7.01    **Feasibility**

      As a condition to confirmation of a plan, Section 1129 of the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor.

      Because plan funding is centered on the sales of the Remaining Property and revenues from the Incentive Agreements, Debtor's history with sales and revenues provides a reasonable basis to project payments under the Plan.  The projections set forth in Exhibit "B" are Debtor's best estimate of the revenues and expenses under the Plan, and demonstrate the Plan's feasibility.

7.02    **Best Interests Test**

      In order to confirm the Plan, the Court must find that each holder of an impaired Claim or Equity Interest either (i) accepted the Plan or (ii) received or retained under the plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. In a typical Chapter 7 case the debtor ceases operations and a trustee is appointed to conduct an orderly liquidation of the Debtor's assets.  The proceeds, net of trustee's fees and other costs and expenses incurred in conducting the liquidation, are distributed to creditors in accordance with their rights and statutorily prescribed priorities of payment.

      If this Case was converted to a liquidation under Chapter 7, the Court would likely lift the automatic stay to permit Whitney Bank to foreclose its lien on the Property.  The Debtor believes that it is highly unlikely that Whitney Bank would bid more than the amount of the indebtedness, meaning other creditors would likely recover nothing unless a higher cash bidder appeared at the sale.  Though possible, such bidders at this level (in excess of $13 million) rarely appear.

      Based upon the forgoing liquidation analysis, unsecured creditors and equity interest holders would receive no distributions on account of their Claims in a Chapter 7 liquidation. Under the Plan, those creditors will receive distributions more than they would get in a Chapter 7 Liquidation.  The Plan proposes to pay secured creditors in full.  Accordingly, Secured Claims are receiving at least as much as they would get under a Chapter 7 liquidation.

## ARTICLE 8.
## ALTERNATIVES TO THE PLAN

8.01    **General**

      The Debtor believes that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan

of reorganization; or (b) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case. BASED UPON DEBTOR'S ASSESSMENT, UNSECURED CREDITORS WOULD RECEIVE NO DISTRIBUTIONS IN A CHAPTER 7 CASE OR IN THE EVENT OF DISMISSAL OF THE CASE.

## 8.02 **Alternative Plans**

If the Plan is not confirmed, the Debtor or any other party in interest in the case could attempt to formulate and propose a different plan. Other parties may propose alternative plans, but the Debtor does not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtor's Plan, or that any such plans will be feasible.

## 8.03 **Liquidation Under Chapter 7 or Dismissal**

If no Plan can be confirmed, this Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtor in accordance with the priorities established by the Bankruptcy Code.

As set forth in the preceding section, the Plan is clearly superior to a Chapter 7 liquidation. No separate liquidation analysis has been prepared as an exhibit.

## ARTICLE 9.
## RISK FACTORS

The risk factors are discussed in Section 7 above.

## 9.01 **Uncertainty in the Financial Projections**

The Projections are based on numerous assumptions that are an integral part of the projections. The assumptions and estimates underlying the projections are inherently uncertain and are subject to business, economic and competitive risks and other uncertainties which could materially affect the accuracy of the Projections. Consequently, the Projections contained in this Disclosure Statement are not intended, nor should they be received as representations that the projections will be achieved.

## ARTICLE 10.
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

## 10.01 **Income Tax Consequences**

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to a creditor or interest holder. The Debtor has attempted to structure the Plan to preserve any valuable tax attributes.

16

An analysis of federal income tax consequences of the Plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated there under, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. Neither the Debtor nor the Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of the Plan.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## ARTICLE 11
## JURISDICTION OF THE COURT

### 11.01  General Retention of Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.

### 11.02  Specific Purposes

Without limiting the effect of Section 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)    modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)    correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)    hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements, asset purchase agreements or other agreements entered into by any of the Debtors during the Case,

(f)     enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g)     assure the performance by Reorganized Debtor of its obligations to make distributions under the Plan;

(h)     enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i)     hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)     ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)     hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

(l)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)     hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)     hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

18

(o)     recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)     hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)     hear and determine all questions and disputes regarding title to the assets of any of the Debtors, their respective Estates;

(t)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)     enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE 12.
## MISCELLANEOUS

### 12.01    Amendment or Modification of the Plan

This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.

### 12.02    Modification of Loan and Collateral Documents

To the extent that the Plan proposes changes in the treatment of the Lender Secured Claim, restated or amended or modified documents will be executed in order to properly document and reflect the terms of the plan for the benefit and protection of the affected Lender. The form of such documents will be subject to lender approval.

### 12.03    Effective Date

The effective date will be the first Business Day that is fifteen (15) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all

conditions to effectiveness set forth in Section 8.02 of the Plan have been satisfied or waived in accordance with the terms of the Plan. No payments to creditors will be made prior to the Effective Date.

## ARTICLE 13.
## REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN

WHEREFORE, DEBTOR SCC KYLE PARTNERS, LTD. submits this Disclosure Statement and the information contained therein, in good faith, in accordance with the provisions of Title 11, U.S.C. § 101 et. seq. for consideration by Creditors and other parties in interest, and as the sole source of information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of Debtor's Plan.

Dated this the 29th day of November 2012.

SCC KYLE PARTNERS, LTD.

By: SCC Kyle Partners GP, LLC, its general partner

By: */s/ Scott Deskins*
        Scott Deskins, President

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19679350
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Telephone: (512) 472-5997
Telecopier: (512) 472-5248 (FAX)

COUNSEL FOR DEBTOR