UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCC KYLE PARTNERS, LTD. | § | CASE NO. 12-11978-HCM |
| (Debtor) | § | (Chapter 11) |
| | § | |

**FIRST INTERIM APPLICATION OF HOHMANN, TAUBE & SUMMERS, L.L.P., COUNSEL TO DEBTOR IN POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**

AN ORDER WILL BE ENTERED GRANTING THE RELIEF REQUESTED HEREIN WITHOUT FURTHER HEARING UNLESS A WRITTEN OBJECTION AND REQUEST FOR HEARING IS FILED WITH THE CLERK WITHIN TWENTY-ONE (21) DAYS OF THIS NOTICE. ANY SUCH OBJECTION MUST ALSO BE SERVED UPON THE MOVING PARTY AND UPON ALL OTHER PERSONS INDICATED ON THE CERTIFICATE OF SERVICE ATTACHED TO THIS PLEADING.

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

The Firm of Hohmann, Taube & Summers, L.L.P. ("HTS"), counsel to SCC Kyle Partners, Ltd. (the "Debtor") in the above-captioned Chapter 11 case, submits its First Interim Application for Allowance of Compensation for Services Rendered and Reimbursement for Expenses Incurred ("Application") and hereby requests: (i) interim approval of fees earned in the amount of $24,120.00 and expenses incurred in the amount of $1,919.78, totaling $26,039.78; and (ii) authority to receive partial payment of these amounts by drawing from the retainer held by the Firm, with any other amounts paid only as may be allowed or directed by the Court. As detailed herein and summarized in the Fee Application Summary, created pursuant to Rule 2016(a)(1) of the Local Bankruptcy Rules and attached hereto as **Exhibit A**, HTS has expended

59.1 hours in this representation of the Debtor. In support thereof, HTS respectfully states and represents:

## NARRATIVE SUMMARY

1. On August 31, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code ("Bankruptcy Code"). The Debtor is operating its business as Debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, HTS received $31,000.00 in payments on behalf of the Debtor (the "Retainer"). HTS still holds $20,446.59 (the bulk of the amounts draw prepetition were for the filing fees for these cases). By application dated August 31, 2012, the Debtor sought to approve the employment and retention of HTS. On September 26, 2012, upon consideration of that application, together with the supporting affidavit, this Court entered an order approving the Debtor's retention of HTS (the "Retention Order"). As stated above, the Fee Application Summary required by Rule 2016(a)(1) of the Local Bankruptcy Rules is attached hereto as **Exhibit A**. A copy of the Retention Order is attached hereto as **Exhibit C**.

3. For HTS's representation of the Debtor, the Application requests fees on an average hourly rate of $408.12. Specifically, the professionals and paraprofessionals involved in the representation and their hourly rates for bankruptcy and non-bankruptcy representations are listed below:

| PROFESSIONAL | TITLE | HOURLY RATE | HOURS |
|---|---|---|---|
| Eric J. Taube | Partner | $530 | 15.3 |
| Mark C. Taylor | Partner | $400 | 39 |
| Ann Marie Jezisek | Paralegal | $125 | .6 |
| Sherri Savala | Paralegal | $80 | 4.2 |

4. No prior applications for compensation or reimbursement of expenses have been made by

5. This Application covers the period from August 31, 2012 (with one exception as noted below) through December 31, 2012 (the "Application Period"). Because the case was converted to a proceeding under Chapter 7, no amounts have been billed subsequent to that time.

6. The Compensation Support Exhibit and Reimbursement Support Exhibit required by Rule 2016(a)(2) and (3) of the Local Bankruptcy Rules is attached hereto as **Exhibit B**.

### CASE STATUS

7. The Debtor has filed its proposed Plan and the Court has set a confirmation hearing for March 7, 2013.

### PROJECT SUMMARY AND SERVICES RENDERED BY HTS

Detailed fee bills for each of the categories below are attached as **Exhibit D**.

8. <u>Cash Collateral/Business Operations</u>. During the Application Period, HTS handled hearings and assisted the Debtor with issues related to operating in chapter 11, negotiations and dealings with its secured creditor, sale motions and hearings, and other creditor and case issues. HTS expended 26.9 hours on projects related to the Debtor's Business Operations, totaling $10,994.00. Expenses for this category totaled $1,500.20.

9. <u>Case Administration</u>. This category includes, among other things, time billed for the initial debtor conference and 341 meeting, preparation of schedules, reviewing MORs, dealing with the U.S. Trustee, and routine administrative issues. The Firm billed 17.8 hours, totaling $6,826.00. Expenses for this category totaled $275.85.

10. <u>Claims Insurer</u>. During the Application Period, HTS spent .8 hours analyzing claims issues, for fees totaling $424.00.

11. <u>Plan/Disclosure Statement</u>. This category includes, among other things, time billed for drafting the proposed plan and disclosure statement and discussions with clients regarding the same. HTS expended 13.6 hours, totaling $4,180.00. Expenses totaled $143.73.

## EXPENSES INCURRED BY HTS

12. HTS has incurred $1,919.78 in reasonable and necessary expenses relating to its representation of the Debtor in this case. No single expense exceeded $100.00. Expenses are itemized on the attached invoices. The bulk of the expenses relate to Westlaw research, photocopying, postage, delivery, and filing fees. Pursuant to the Retention Order and subject to Bankruptcy Court approval, HTS is entitled to reimbursement of actual and necessary expenses incurred in the rendition of its services to the Debtor. In explanation of certain expense categories, HTS states as follows:

   a. <u>Copying</u>. HTS charges 15 cents per page for photocopying. The charge is reasonable in view of the fact that (i) the rate is the same rate charged by HTS to other clients, and (ii) the clerk of this Court charges 50 cents per page, not including certification, for all copies.

   b. <u>Fax charges</u>. When necessary, HTS uses telecopy and facsimile machines to quickly communicate documents relating to this case. Because such communication involves equipment and personnel not used by all clients, HTS routinely charges the client for such services at the rate of 10 cents per page for outgoing faxes, with no charge for incoming faxes.

   c. <u>Computer Research</u>. Charges for use of Westlaw and other on-line research tools are charged only to clients whose situation require the use

        of such tools, thus reducing costs to the clients as much as possible. Those on-line services are invaluable for up-to-date research, allowing rapid access to numerous resources that might otherwise be difficult to obtain. The charges to clients is the same as that charged to HTS by the provider of the services.

    d.    <u>Delivery Services</u>. On occasion, overnight or hand-delivery of documents and other materials is required to expedite receipt of critical documents or information. Since many clients do not require such expedited service, HTS bills such services directly to the client needing them, instead of including the services as a component of hourly rates. HTS charges the client the cost of such service. There is no charge when an employee of HTS hand delivers packages; a procedure which is employed whenever possible.

13. HTS has made every effort to minimize its disbursements in this case. The expenses incurred in the rendition of professional services are necessary, reasonable and justified under the circumstances to serve the needs of the Debtor, its estate and creditors.

## **LEGAL STANDARDS**

14. Pursuant to section 330 of the Bankruptcy Code, this Court may award to professional persons employed under section 327 reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred. Three well-established guidelines have been established by Courts for evaluating fee applications: the two-step analysis, the "lodestar" approach, and the *Johnson* factors.

15. In the two-step analysis, the Court engages in the two-step analysis imposed by section 330(a)(1) of the Bankruptcy Code:

    (1)    determine whether the services rendered were necessary and appropriate; and

    (2)    evaluate whether the compensation sought is reasonable.

*In re Temple Retirement Community, Inc.*, 97 Bankr. 333, 338 (Bankr. W.D. Tex. 1989).

16. Under the guideline commonly known as the lodestar approach, the Court determines a reasonable attorney fee in a case by multiplying the number of hours expended by an hourly rate. *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 456 (1987).

17. The Johnson factors were established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors for reviewing fee applications include the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; the undesirability of the case; the nature and length of the profession of relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-719.

18. Under each of the guidelines, HTS submits the fees requested herein are fair and reasonable.

## APPLICATION OF GUIDELINES

19. As required by the first step of the two-step analysis imposed by section 330(a)(1) analysis, all services rendered in this case by HTS were necessary and appropriate. The actions taken by HTS were essential to preserving the value of the assets for the estate, and in attempting to effect a reorganization for the benefit of all creditors.

20. Likewise with respect to the second step of the analysis, the compensation sought by HTS is competitive. HTS committed the bankruptcy expertise of Mark Taylor and Eric Taube, who during the Application period, worked with the Debtor to control fees and expenses

related to this bankruptcy by working to resolve issues by agreement. HTS also extensively utilized non-billing personnel to provide the attorneys with support. Many services rendered by HTS's non-billing personnel are regularly allowed as paralegal services in similar representations. HTS staffing decisions resulted in efficient case management. The issues in this bankruptcy case have been addressed promptly, properly and with no duplication.

21. Under the lodestar method, in aggregate, HTS rendered 59.1 hours of service at an average hourly rate of $408.12. The average hourly rate is higher than the rate recommended in this district because HTS did not layer this representation with unnecessary paralegal and junior attorneys to lower the average. The issues in this case have been addressed by drawing on the expertise of Mr. Taylor and Taube, not by extensive hours in a library or litigating.

22. The twelve *Johnson* factors also support approval of the interim fees requested in this case.

    a. <u>Time and Labor Required</u>. HTS expended 59.1 hours to represent the Debtor in the Application Period. Because of HTS's desire to minimize duplication, the majority of billed attorney time was incurred by Mark Taylor.

    b. <u>Novelty and Difficulty of the Questions</u>. Representation of the Debtor involved some complex issues relating to the sales of property and proposed plan. Other matters were typical for a single-asset case.

    c. <u>Skill Required</u>. The case has required a fair amount of skill because of the complexity of the issues discussed above.

    d. <u>Preclusion of Other Employment</u>. This representation has not caused significant dislocation or preclusion of other employment by HTS.

  e. <u>Customary Fee</u>.  If this case were not one under the Bankruptcy Code, HTS would charge the Debtor, and expect to receive on a current basis, an amount at least equal to the amounts herein requested for the professional services rendered.  HTS represents and would demonstrate that the fees are competitive for this region and customary for the degree of skill and expertise required in the representation of Debtor by other experienced bankruptcy practitioners and other professionals in this district.

  f. <u>Fixed or Contingent Fee</u>.  HTS accepted this representation on an hourly basis with a retainer approved by the Bankruptcy Court.  Collection of all amounts beyond the initial retainer are, by their nature, contingent.  In this case, it is unlikely there will be any estate assets to provide payment to HTS.

  g. <u>Time Limitations</u>.  Time limitations were not a substantial factor.

  h. <u>Amounts and Results</u>.  The Debtor has submitted its proposed Plan, and the Court has set a confirmation hearing for March 7, 2013.

  i. <u>Experience, Reputation and Ability</u>.  Mr. Taube and Mr. Taylor are highly experienced in creditors' rights and debtor protection work, and have been actively involved in many bankruptcy cases in the Western District of Texas and elsewhere.  Mr. Taube, Mr. Taylor and HTS enjoy a reputation as providing quality legal services without inefficiencies and duplications which occasionally occur in representations by larger, full service firms.

  j. <u>Undesirability of the Case</u>.  There are no particular undesirable features of this case.

  k. <u>Relationship with Client</u>.  HTS had no pre-existing relationship with the Debtor until selected by it for prepetition consultation on debt restructuring and bankruptcy.  The

Debtor chose HTS and Mr. Taube, in particular, because of their reputation in matters of this type.

l.      <u>Awards in Similar Cases</u>.  The compensation sought by HTS is this case is the commensurate rates sought by professionals in other cases in this district.

## CONCLUSION

For the foregoing reasons, HTS requests approval of fees and expenses as set forth above.

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.


By:     */s/ Mark C. Taylor*
　　　Eric J. Taube
　　　State Bar No. 19679350
　　　Mark C. Taylor
　　　State Bar No. 19713225
　　　100 Congress Ave. Suite 1800
　　　Austin, TX 78701
　　　(512) 472-5997
　　　(512) 472-5248 [fax]

ATTORNEYS FOR DEBTOR



## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served upon those parties receiving the Court's ECF e-mail notification on February 1, 2103.


*/s/Mark C. Taylor*
Mark C. Taylor

Page 9