## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **SCC KYLE PARTNERS, LTD.,** | § | **Case No. 12-11978-HCM** |
| | § | **(Chapter 11)** |
| Debtor. | § | |
| | § | |

### APPELLANT WHITNEY BANK'S AMENDED MOTION FOR STAY PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005

THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.

IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD

A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD

To the Honorable H. Christopher Mott, U.S. Bankruptcy Judge:

Whitney Bank, successor-by-merger to Whitney National Bank, individually and as agent for certain pre-petition lenders (collectively, "Whitney Bank"), hereby requests, pursuant to Federal Rule of Bankruptcy Procedure 8005, that this Court stay the effect of the Order Confirming Debtor's Second Amended Plan of Reorganization under Chapter 11, Title 11, United States Code, signed and entered on July 1, 2013 (Docket No. 133, the "Confirmation Order"), pending the resolution of Whitney Bank's appeal of the Confirmation Order. Alternatively, if the Court denies a stay pending appeal, Whitney Bank requests that the Court order a brief administrative stay so that Whitney Bank may present an expedited motion for stay pending appeal to and obtain a ruling from the United States District Court for the Western District of Texas. In support of this Motion, Whitney Bank respectfully states as follows:

## INTRODUCTION

1.     In summary, the Court should grant a stay pending appeal of the Confirmation Order for the following reasons:

### Likelihood of Success on the Merits

- The record illustrates that the Plan did not receive the requisite votes to allow a cramdown on Whitney Bank as the only affirmative votes on the Plan were that of Seton Family of Hospitals ("Seton"), which does not hold a voting interest in the bankruptcy case, and that of Kyle Investment Group, LLC, the limited partner of the Debtor.

- The record illustrates that the Plan is not fair and equitable with respect to Whitney Bank's secured claim as required under Section 1129(b) of the Bankruptcy Code because (i) Whitney Bank's valid liens are impaired under the Plan and it is not receiving the indubitable equivalent of its secured claim, (ii) the Debtor unfairly shifted the risk of failure of the Plan to Whitney Bank, and (iii) the Plan improperly modifies the bankruptcy court's Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. §363(f), entered on December 17, 2012 (the "Avail Sale Order"), by reclassifying some portion of the payment of the net sale proceeds as "prepaid interest."

- The record illustrates that the Debtor's projections in support of the Plan are pure conjecture and speculative at best, and that confirmation of the Plan will likely be followed by the liquidation or the need for further financial reorganization of the Debtor.

- The record illustrates that the Debtor lacked good faith in proposing the Plan by the actions it took with respect to the five year old unfulfilled charitable pledge to Seton.

### Irreparable Injury

- If the Confirmation Order becomes effective and the Plan is consummated, there is a significant risk all or a portion of Whitney Bank's arguments will be equitably moot on appeal, which courts have recognized as constituting an irreparable harm.

### No Substantial Harm to Other Parties

- The Debtor has not projected that the value of the 50.174 acres of land in Kyle, Texas (the "Real Estate"), securing Whitney Bank's claim will decrease over time, and the Debtor will still be able to sell the Real Estate under 11 U.S.C. §363 during the pendency of the appeal.

- The Debtor has limited creditors other than Whitney Bank, and the amount owed to those other creditors is relatively small as compared to the Debtor's indebtedness to Whitney Bank.

- The Debtor's creditors other than Whitney Bank will not be substantially harmed if this Court granted the relief requested in this Motion.

## Public Interest

- The availability of meaningful appellate review and the enforcement of participants' rights in the bankruptcy system are important public interests, neither of which is likely to be fully realized without the granting of a stay.

## BACKGROUND

2.      The Debtor's Second Amended Plan of Reorganization under Chapter 11, Title 11, United States Code, signed and entered on July 1, 2013 (the "Plan"), which was confirmed in the Confirmation Order, includes the following key features:

a.      Priority Tax Claims (Class II) are to be paid in full over 5-year period in equal monthly installments with interest at 12% per annum commencing 30 days after the effective date of the Plan and taxes attributable to a parcel of land are to be paid at the closing of the sale of the lot. *See* Plan, art. 4.1.2.

b.      Whitney Bank's secured claim (Class III) is to be paid over a 5-year period in monthly interest-only payments at 7% per annum from a "one-year rolling reserve" account to be funded by the proceeds of future sales of the Real Estate. Whitney Bank will be required to release its lien on the Real Estate sold but not receive any of the sale proceeds until the "rolling reserve" account is funded. *See* Plan, art. 4.1.3.

c.      General Unsecured Creditors (Class IV) whose claims total $6,464.06, are to be paid in full, in equal quarterly payments beginning 90 days from the effective date, and continuing each quarter for 16 quarters until paid; "*provided however, that the claim of Seton Hospital shall receive payments totaling $250,000 during 16 quarters with the balance payable after the Class III Allowed Claim is paid in full.*" *See* Plan, art. 4.1.4.

d.      Subordinated Claims (Class V) will retain their claims, but shall not receive any payment until senior classes are paid in full. *See* Plan, art. 4.1.5.

e.      Debtor's existing equity interest holders (Class VI) will retain their

interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full. *See* Plan, art. 4.1.6.

3.      Whitney Bank holds a claim (the "Whitney Bank Claim") in the approximate amount of $12.4 million against the Debtor secured by first-priority properly perfected liens and security interests on substantially all of the Debtor's personal and real property, including but not limited to the Debtor's cash collateral and the Real Estate located in Kyle, Texas.

4.      The Whitney Bank Claim is evidenced by certain pre-petition loan documents, including but not limited to, that certain First Amended and Restated Construction Loan Agreement (the "Loan Agreement"), as same may have been amended and modified from time to time, the Assignment Agreement dated March 31, 2011, and those certain Multiple Advance Term Promissory Notes payable to Amegy Bank, N.A., American Bank, N.A., Capital One, N.A., TrustMark National Bank, and Whitney Bank (collectively, the "Notes"), and the Deed of Trust, the Assignment of Reimbursement and Contract and Proceeds, and the Assignment of Leases and Rents, granting Whitney Bank a priority lien against the Real Estate, together with the improvements thereon and all rents, income and proceeds derived from the Real Estate and the revenue and income from the Seton/SCC Development Project and Incentive Agreements.

5.      On August 31, 2012 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to stay the foreclosure of the Real Estate by Whitney Bank.

6.      On November 29, 2012, the Debtor filed its Chapter 11 Plan of Reorganization and proposed Disclosure Statement. On January 21, 2013, the Debtor filed its Amended Disclosure Statement and Amended Plan of Reorganization. The following day, the Court entered its Order Approving Disclosure Statement (the "Disclosure Statement Order"), and set a

hearing on confirmation of the proposed plan on March 7, 2013 at 9:30 a.m. (the "Confirmation Hearing"). Debtor subsequently filed Debtor's First Modification to Proposed Amended Plan of Reorganization on April 3, 2013.

7.    The Court held the Confirmation Hearing on the Plan on April 4, 2013 and April 16, 2013. After the commencement of the Confirmation Hearing, Debtor filed (i) Debtor's Second Modification to Proposed Plan of Reorganization, (ii) Debtor's Amended Second Modification to Proposed Amended Plan of Reorganization, and (iii) Debtor's Second Amended Second Modification to Proposed Amended Plan of Reorganization. On June 14, 2013, the Court ruled that it would confirm the Plan as modified by the First Modification with respect to Seton's treatment, and as modified by the Second Amended Second Modification with respect to Whitney Bank's treatment and the taxing authorities' treatment under the Plan.

8.    The Court entered the Confirmation Order confirming the Plan on July 1, 2013.

ARGUMENT

**I.    Standard for Stay Pending Appeal.**

9.    The Fifth Circuit employs a 4-part test to determine whether to grant a stay pending appeal:

> (1)    Whether the movant has made a showing of likelihood of success on the merits;
>
> (2)    Whether the movant has made a showing of irreparable injury if the stay is not granted;
>
> (3)    Whether the granting of the stay would substantially harm the other parties; and
>
> (4)    Whether the granting of the stay would serve the public interest.

*Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982).

10.     This test also applies to a motion for stay pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8005. *See In re First South Savings Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987) (issuing writ of mandamus requiring district court to impose stay); *In re Texas Equip. Co.*, 283 B.R. 222, 227 (Bankr. N.D. Tex. 2002). Courts generally do not "apply these factors in a rigid mechanical fashion." *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994) (citation omitted). Indeed, the appellant "need not always show a probability of success on the merits; instead the Movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *First South*, 820 F.2d at 704.

11.     For the reasons discussed below, this Court's application of the four-part standard should result in the issuance of a stay to preserve the status quo pending the disposition of Whitney Bank's appeal.

**II.     There is a Substantial Likelihood of Success by Whitney Bank on Appeal.**

12.     This appeal involves several significant issues, success on any one of which would require reversal of the Confirmation Order. Whitney Bank believes that it will likely succeed on appeal. Given the seriousness of the issues to be presented on appeal and the compelling equities involved, however, Whitney Bank asserts that it must only meet the lesser "substantial case on the merits" standard. Whitney Bank's appeal satisfies this test for the following reasons.

*A.     Debtor not eligible for a cramdown in bankruptcy case*

13.     Class 3, which consists of the Whitney Bank Claim, voted to reject the Plan. Thus, the Plan could only be confirmed if it satisfies the cramdown requirements of Section

1129(b) of the Bankruptcy Code. Debtor's eligibility to cramdown on Whitney Bank hinges on the validity of Seton's affirmative vote accepting the Plan as a Class 4 claimant.[1] Seton's unsecured "claim" in the amount of $500,000 is based on a charitable pledge to Seton Hays Foundation made by Debtor on August 5, 2008. For its vote to count, the Debtor must establish that Seton is a creditor of the Debtor. A creditor of the Debtor is an entity that has a claim against the Debtor that arose at the time or before the petition date. See 11 U.S.C. §101(10).

14.     The United States Supreme Court held that a "claim" under the Bankruptcy Code refers to a right of payment recognized under state law. *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007). A claim is not allowed if such claim is unenforceable against the Debtor under any agreement or applicable law. See 11 U.S.C. §502 (a). A contract lacking consideration is unenforceable under Texas law. *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex.App.-San Antonio 2011, pet. denied).

15.     Seton's claim based upon a charitable pledge is not an enforceable contract under Texas law because it was not supported by valid consideration. "Consideration consists of either a benefit to the promisor or a detriment to the promisee." *Robinson v. Nat'l Autotech, Inc.,* 117 S.W.3d 37, 41 (Tex.App.-Dallas 2003, pet. denied). The pledge form on which Seton bases its claim on its face states that no goods or services were provided to Seton in exchange for the contribution. Indeed, the "*sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 118, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986). Even assuming some value was received by Debtor, it was not in exchange for the charitable contribution. *Quid pro quo* is inconsistent with charitable contribution. *See Hernandez v. Commissioner*, 490 U.S. 680, 691, 109 S.Ct.

---

[1]     Horizons Land Company, LLC submitted a vote accepting the Plan, however, it failed to identify the type and amount of any claim it has against the Debtor, filed no proof of claim in the case, and was not listed as a creditor or holder of any claim by the Debtor.

2136, 2144-45, 104 L.Ed.2d 766 (1989). Consistent with that legal principle, Scott Deskins, Debtor's principal, testified at the Confirmation Hearing that the Debtor did not receive any benefit from the charitable pledge.

16.      A claim against the bankruptcy estate based upon a charitable pledge that is not supported by consideration should be disallowed by the bankruptcy court. *See In re Bashas' Inc*, 482 B.R. 611, 612 (D. Ariz. 2012); and *In re Maxcy*, 45 B.R. 268, 270 (Bankr. D.Mass 1985). Because Seton does not occupy the position of either a creditor, an equity security holder or an indenture trustee holding an allowed claim against the Debtor, it does not hold a voting interest in the bankruptcy case.  *See In re Lincoln Avenue & Crawford's Home for the Aged, Inc*., 164 B.R. 600 (Bankr. S.D. Ohio 1994).  The bankruptcy court has set a hearing on the Objection to Seton's Claim on August 29, 2013. The Plan cannot satisfy the prerequisites to be eligible for a cramdown if Seton's claim and vote are invalid.

   **B.**      ***The Plan is not fair and equitable with respect to Whitney Bank's claim as required under Section 1129(b) of the Bankruptcy Code.***

        (i)  <u>Whitney Bank is not provided with the indubitable equivalent of its claim</u>

17.      Under the Plan, Whitney Bank is required to partially release its lien against the Real Estate without receiving the net proceeds of the sale or a replacement lien. Indubitable equivalence requires more than the payment of interest; it requires the protection of the creditor's rights "to get his money or at least the property." *See In re Sparks,* 171 B.R. 860, 866 (Bankr. N.D. Ill. 1994) *citing In re Murel Holding Corp*., 75 F.2d 941, 942 (2nd Cir. 1935). To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the "indubitable equivalent" requires that the substitute collateral not increase the creditor's risk exposure. *In re Arnold & Baker Farms*, 85 F.3d 1415, 1422 (9th Cir. 1996); *In re Keller*, 157 B.R. 680, 683-84

(Bankr.E.D.Wash. 1993); *see also In re Monarch Beach*, 166 B.R. 428, 436 (C.D.Cal. 1993)(fair and equitable prohibits shifting risk of plan failure to the creditor).

18.     The Whitney Bank Claim is secured by the Real Estate, the revenue from the Development Project and Incentive Agreements, and the cash in the Debtor's bank account. In this case, the Plan permits the Debtor to use Whitney Bank's cash collateral and the "rolling reserve" account to pay unsecured creditors and other expenses of the Debtor, but does not provide Whitney Bank with the net sale proceeds from the disposition of its collateral, or substitute collateral. There are no protections under the Plan to ensure Whitney Bank will receive any payments in the event a future sale does not occur even though the Plan permits use of Whitney Bank's collateral to pay unsecured creditors or expenses. Under the Plan, Whitney Bank's secured position is diminished.

(ii)     <u>The Debtor Unfairly Shifted the Risk of Plan Failure to Whitney Bank</u>.

19.     A plan of reorganization is not confirmable if it shifts the risk of failure to the debtor's secured creditors. *In re Monarch Beach Venture, Ltd.*, 166 B.R. at 436; *In re Counsel Restaurant Corp.*, 146 B.R. 979, 989 (Bankr. D. Minn. 1992); *In re Miami Center Associates*, 144 B.R. 937, 940 (Bankr. S.D. Fla. 1992). The Plan provides that Whitney Bank will be paid monthly interest-only payments from a "one-year rolling reserve" account to be funded by the proceeds of future sales of its collateral, i.e. the Real Estate. If no sale of the Real Estate occurs, Whitney Bank will not receive any principal payments under the Plan.

20.     The Plan proposed in this case clearly shifts the risk of failure to Whitney Bank by requiring Whitney Bank to release its liens on portions of the Real Estate, but only providing a delayed repayment in the form of interest-only payments over a five (5) year term with no principal payment unless and until a portion of the Real Estate is sold. At the same time, the Plan allows the Debtor to use the Whitney Bank's cash collateral to pay unsecured creditors a portion

of their claims and a five year old charitable pledge to Seton. Even if a sale occurs under the Plan, Whitney Bank will not receive a principal payment in exchange for its partial release of lien unless the net sales proceeds exceed the funding requirements for the "one year rolling reserve" account. In other words, the Plan intends to benefit other creditors and a charity at Whitney Bank's expense. Should the Plan fail prior to making all required payments, the Debtor's other creditors may receive a larger percentage of their plan payments ahead of Whitney Bank.

(iii)    Plan improperly modifies the Avail Sale Order

21.    Under the Plan, Whitney Bank is required to consider a portion of the net sale proceeds it received from release the sale to Avail Healthcare as "prepaid interest" despite the Debtor owing approximately $845,942.86 in accrued and unpaid interest to Whitney Bank as of the date of the sale. Neither the Plan, nor the Confirmation Order, provides sufficient detail to accurately calculate the amount of the proceeds that should be credited as "prepaid interest," or the amount that is to be applied to the outstanding indebtedness. Such treatment is contrary to the Avail Sale Order which is a final judgment and violates the principles of *res judicata*. *See Rivet v. Regions Bank of Louisiana, F.S.B.*, 108 F.3d 576, 588 (5th Cir. 1997).

**C.    *The Debtor's projections in support of the Plan are pure conjecture and confirmation will likely be followed by the liquidation of the Debtor***

22.    The projections attached to the Disclosure Statement and presented at the Confirmation Hearing are pure conjecture on the Debtor's part. The record evidence at the Confirmation Hearing establishes that the Debtor has no income stream or other source of funds from which to pay the claims of the taxing authorities or Whitney Bank unless and until it can sell a parcel of the Real Estate. The success of the Plan is entirely dependent on future speculative sales to unknown prospective purchasers.

23.    Bankruptcy courts are skeptical of plans that allow debtors to postpone the

inevitable and gamble with creditors' money on a long-shot possibility of drastic improvement in the Debtor's business. *See, e.g., In re M & S Assocs, Ltd.*, 138 B.R. 845, 851 (Bankr. W.D. Tex. 1992). Plans containing provisions for negative amortization, and "balloon" payments are regularly found not to be feasible, such as where a plan is based upon the fulfillment of a particular condition. *See, e.g., In re M & S Assocs., Ltd.*, 138 B.R. at 851; *In re Guilford Telecasters, Inc.*, 128 B.R. 622, 627-28 (Bankr. M.D.N.C. 1991); *In re Apple Tree Partners*, L.P., 131 B.R. 380 (Bankr. W.D. Tenn. 1991); *In re Sovereign Oil* Co., 128 B.R. 585, 586-87 (Bankr. M.D. Fla 1991); and *In re SIS Corp.*, 120 B.R. 93 (Bankr. N.D. Ohio 1990) (submission of reorganization plan on conditional basis renders plan not feasible). Based on the record at the Confirmation Hearing and the lack of positive cash flow, confirmation of the Plan will almost certainly be followed by the liquidation or the need for further financial reorganization. Thus, the Plan cannot satisfy 11 U.S.C. §1129(a)(11).

### D.    *The Debtor's Lack of Good Faith in Proposing the Plan*

24.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed "with the legitimate and honest purpose to reorganize and has a reasonable hope of success." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir. 1997) (citation omitted); *see also In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) (good faith implies "an honest and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose."). There is no reorganization of the Debtor is contemplated. This Plan is a five year liquidation plan. Debtor has not objected to Seton's claim as of this date even though its principal admitted that the claim is unenforceable. The Debtor's reluctance to eliminate a $500,000 unenforceable claim is a result of Seton being the only affirmative vote the Debtor received for its Plan for cramdown purposes.

\

25.     The totality of the circumstances in this case demonstrates that the Plan was not proposed in good faith. The Debtor's attempt to gain an affirmative vote on the Plan via inclusion of the five year old charitable pledge to Seton for voting purposes, artificial impairment of Seton's "claim" under the Plan, and the failure to object to such claim despite acknowledging the claim is not enforceable against the Debtor is a clear example of the Debtor's lack of good faith in relation to the Plan.

**III.     Whitney Bank Will Suffer Irreparable Harm in the Absence of a Stay**

26.     If neither this Court nor the District Court grants a stay pending appeal, the Debtor undoubtedly will attempt to consummate the Plan while Whitney Bank's appeal is pending. Once the Plan becomes effective, the Debtor and reorganized debtor will likely argue that equitable mootness bars the relief sought by Whitney Bank. *See generally In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009) (discussing a three-factor test for equitable mootness—whether a stay was obtained, whether the plan is substantially consummated, and whether the relief sought would affect the rights of parties not before the court or the success of the plan). The application of the equitable mootness doctrine depends on the facts and circumstances of a particular case, but the Fifth Circuit's decision in *Pacific Lumber* demonstrates the risk that Whitney Bank's appeal may be mooted in the absence of a stay.

27.     The loss of appellate review constitutes irreparable injury. *See Tex. Equip.*, 283 B.R. at 228; *In re Herrera*, No. 09-52974, 2010 WL 148182, at *3 (Bankr. W.D. Tex. Jan. 8, 2010); *see generally In re Barrier*, 776 F.2d 1298, 1300 (5th Cir. 1985) (issuing writ of mandamus to require stay pending appeal where debtor's actions threatened to "effectively undermine the utility of [creditor's] appeal"); *First South*, 820 F.2d at 709 n.11 (noting that appeal would be moot if not stayed).

28.     In addition, this case raises important issues that deserve a full airing in the appellate courts. At least a portion of Whitney Bank's arguments may be subject to arguments of equitable mootness, which would eliminate Whitney Bank's statutory right of appeal an issue of great importance to Whitney Bank and other commercial lenders. A stay pending appeal would prevent this irreparable harm on Whitney Bank.

**IV.     A Stay Will Not Cause Material Harm to the Debtor or Other Interested Parties**

29.     If the Confirmation Order is stayed, the Real Estate will remain under the ownership of the Debtor pending resolution of the appeal. The Debtor will still be permitted to market and sell the Real Estate with Court approval under §363 the same as if the Confirmation Order is not stayed. The same individuals will be responsible for the day-to-day operations of the Debtor, i.e. mowing the grass and waiting for the market to improve, the same operating expenses will need to be paid, and the value of the Real Estate will change, if at all, in the same manner as it would if the Confirmation Order was not stayed. The Debtor will make payments to Whitney Bank or the taxing authorities a portion of the Real Estate is sold, same scenario that would be due if the Plan became effective, but the a stay will permit the bankruptcy estate to conserve the existing cash collateral while Whitney Bank is appealing the Confirmation Order.

30.     Whitney Bank is aware of no reason why the timing of the effective date of the Plan could constitute prejudice sufficient to require the immediate consummation of the Plan. The only payments that will be delayed are the monthly payments to the taxing authorities, who will be paid all the taxes attributable to a lot when the lot is sold, quarterly payments to the general unsecured creditors in the amount of $404.00, which represents a tiny percentage of the Debtor's creditor body, and the quarterly charitable donation of $15,615.00 to Seton, which is an improper use of the estate funds. Other than a potential delay in payment, there is no substantial

harm to unsecured creditors pending appeal.

31.     For these reasons, the prejudice to the Debtor and other parties in interest from the issuance of a stay pending appeal is entitled to little or no weight in the Court's decision on this Motion. Moreover, the Court may issue a stay without requiring Whitney Bank to post a bond. *See* FED. R. BANKR. P. 8005 (stating that relief *may* be conditioned upon filing of bond); *Tex. Equip.*, 283 B.R. at 229 n.5. As discussed herein, the lack of harm that would be caused by a delay in the effective date of the Plan supports the Court not requiring Whitney Bank to post a bond if a stay is granted.

**V.     A Stay Is In the Public Interest.**

32.     There is a strong public interest in the preservation of the right to meaningful appellate review. *See In re Adelphia Comm. Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007). Participants in the bankruptcy system and, more generally, the financial system depend on the enforcement of their statutory rights and the regularity of procedures in Chapter 11 cases. The issuance of a stay pending appeal will permit the appellate courts an opportunity to consider the issues raised by Whitney Bank in this case, which are of general importance to Chapter 11 cases and the credit system as a whole.

<u>CONCLUSION AND REQUESTED RELIEF</u>

WHEREFORE, Whitney Bank respectfully requests that the Court stay the effectiveness of the Confirmation Order pending the disposition of Whitney Bank's appeal thereof and grant such other relief that the Court deems just and proper.

Dated: July 24, 2013

Respectfully Submitted,

**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
512/370-2800 – telephone
512/370-2850 – facsimile

By:＿＿/s/ *James G. Ruiz*＿＿＿＿＿＿＿＿
     James G. Ruiz
     State Bar No. 17385860

**ATTORNEYS FOR WHITNEY BANK,
APPELLANT/ SECURED CREDITOR**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of July 2013, a true and correct copy of this document was served electronically on all registered ECF users in this case, and by U.S. first class mail on all persons identified below and to the other parties listed on the attached creditor matrix.

Eric J. Taube
Mark C. Taylor
Hohmann Taube & Summers, LLP.
100 Congress Ave., Suite 1800
Austin, TX 78701

Valerie Wenger
Office of U.S. Trustee
903 San Jacinto, Rm. 230
Austin, TX 78701

Shelby A. Jordan
Jordan, Hyden, Womble, Culbreth, & Holzer P.C.
500 North Shoreline Blvd., Suite 900
Corpus Christi, Texas 78401-0341

Ida A. Murguia, JD
Seton Family of Hospitals
1345 Philomena Street, Suite 410.2
Austin, Texas 78723

---

Lee Gordon
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, Texas 78680

Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, Texas 78760

*/s/ James G. Ruiz*
James G. Ruiz

## Service List

Bridgestone Retail Operations, LLC
333 E. Lake Street
Bloomingdale, IL  60108

Hays Central Appraisal District
21001 IH 35 North
Kyle, TX  78640

Horizons Land Company, LLC
3314 Three Rivers Drive
Austin, TX  78746

Internal Revenue Service
Centralized Insolvency Operations
P. O. Box 7346
Philadelphia, PA  19101-7346

Libby Simonson
P. O. Box 1806
Liberty, TX  77575

SCC Kyle Lot 1-J, Ltd.
301 Congress Ave., Suite 1550
Austin, TX  78701

Texas EcoGrow
10135 Metropolitan Dr.
Austin, TX  78758

Whitney National Bank
4265 San Felipe, Suite 200
Houston, TX  77027