IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 SEP 19 PM 4: 41

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ C

DEPUTY

| | |
|---|---|
| IN RE: | § |
| SCC KYLE PARTNERS, LTD., | § |
| DEBTOR. | § |
| | § |
| WHITNEY BANK, SUCCESSOR BY | § |
| MERGER TO WHITNEY NATIONAL | § |
| BANK, INDIVIDUALLY AND AS | § |
| AGENT FOR CERTAIN PRE-PETITION | § |
| LENDERS, | § |
| APPELLANT, | § |
| | § |
| V. | § |
| | § |
| | § |
| | § |
| SCC KYLE PARTNERS, LTD., AND | § |
| SETON FAMILY OF HOSPITALS, D/B/A | § |
| SETON MEDICAL CENTER HAYS, | § |
| APPELLEES. | § |

FILED

SEP 22 2014

U.S. BANKRUPTCY COURT
BY _00__ DEPUTY

CAUSE NO. A-13-CV-756-LY
BANKRUPTCY NO. 12-11978-HCM
(CHAPTER 11)

## MEMORANDUM OPINION AND ORDER

Before the court is the above styled and numbered consolidated bankruptcy appeal.[1]

Appellant Whitney Bank, Successor by Merger to Whitney National Bank, Individually and as Agent

for Certain Pre-petition Lenders, ("Whitney Bank") contends that the bankruptcy court erred in

rendering two orders: (1) Order Confirming [Kyle Partners'] Second Amended Plan of

Reorganization Under Chapter 11, Title 11, United States Code signed July 1, 2013 (Bankruptcy

---

[1] As the issues are intertwined, the court consolidated into this action Appellant Whitney
Bank, Successor by Merger to Whitney National Bank, Individually and as Agent for Certain Pre-
petition Lenders's two appeals. *See Whitney Bank v. SCC Kyle Partners, Ltd.*, No. 1:13-CV-756-LY
(W.D. Tex. Feb. 20, 2014); *Whitney Bank v. SCC Kyle Partners, Ltd.*, No. 1:13-CV-1064-LY (W.D.
Tex. Feb. 20, 2014).

Docket No. 133) ("Confirmation Order"),[2] and (2) Order Denying Whitney Bank's Objection to

Claim of Seton Family of Hospitals' amended proof of claim in the amount of $500,000, against

Appellee Debtor SCC Kyle Partners, Ltd., ("Kyle Partners") signed October 25, 2013 (Bankruptcy

Docket No. 185).[3] The court ordered briefing and on November 1, 2013, and April 22, 2014, heard

oral argument. Having considered the parties' briefing and arguments, the bankruptcy court's orders

and case file, and the applicable law, the court affirms the bankruptcy court's rulings.

## I. Background

### Kyle Partners' Property Development and Seton Hospital Pledge, and Whitney Bank's Financing

In 2007, Kyle Partners obtained an $18 million loan from Whitney Bank and applied the

proceeds to purchase a 147-acre tract of land (the "Property") in the City of Kyle, Texas (the "City")

for $27 million. Kyle Partners planned to develop the Property as the "Village at Kyle," a 900,000-

square-foot commercial retail project. To secure the loan, Kyle Partners executed a deed of trust on

the Property in favor of Whitney Bank. Whitney Bank also committed to provide Kyle Partners with

additional funding of up to $122 million for construction and development of the project. Kyle

Partners' limited partners funded the project with $11 million.

---

[2] The Confirmation Order addressed Kyle Partners' Proposed Amended Plan of Reorganization (Bankruptcy Docket No. 49) as modified by the First Modification (Bankruptcy Docket No. 98) and the Amended Second Modification (Bankruptcy Docket No. 102), all of which were combined in the Second Amended and Modified Plan of Reorganization ("Plan") that is attached as Exhibit A to the Confirmation Order. The bankruptcy court rendered its Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions on June 14, 2013 (Bankruptcy Docket No. 127).

[3] The bankruptcy court rendered its findings of fact and conclusions of law on the record in open court denying Whitney Bank's objections to Seton Family of Hospitals' proof of claim on October 25, 2013 (Bankruptcy Docket No. 193).

In September 2007, Kyle Partners and Seton Hospital[4] entered into economic-development incentive agreements with the City and Hays County, the county in which the City is located. Under these agreements, the City was to provide development reimbursements and economic incentives to Seton Hospital to build a hospital in Kyle and to Kyle Partners to build the Village at Kyle. These agreements provided Kyle Partners with a percentage of the sales-tax revenue that would be collected from the retail businesses that located in the Village at Kyle.

In October 2007, Kyle Partners entered into a First Amended and Restated Construction Loan Agreement with Whitney Bank. In the agreement, Kyle Partners allocated $2,000,000 of the loan proceeds as a gift to Seton Hospital, to be paid once construction began on the hospital. Although construction on the hospital began in April 2008, Kyle Partners made no gift to Seton Hospital.

On August 5, 2008, Scott Deskins, president of Kyle Partners, executed a "Seton Medical Center Hays, a member of the Seton Family of Hospitals, Seton Hays Foundation Pledge" form on behalf of Kyle Partners. The form provided, "It is my/our pleasure to pledge $1,000,000.00 to the Seton Hays Foundation. Payment will be made by check. My check in the amount of $1,000,000." Immediately following this clause and handwritten on the form is, "will be paid by year end 2008." The form provides, "Checks made payable to The Seton Hays Foundation." Following the signature and date lines on the form appears the following, "I/we" then handwritten is, "Do Give" after which the form continues, "permission for public recognition of my contribution." Immediately following and handwritten in is the clause, "and reserve naming the grand entrance and lobby." Further, the

---

[4] "Seton" is used in the titles of several entities including, Seton Medical Center Hays, Seton Family of Hospitals, and Seton Hays Foundation. For convenience, the court refers to the primary entities at issue, Seton Hays Foundation as "Seton Foundation," and Seton Family of Hospitals as "Seton Hospital."

3

form included, "For more information please contact: Gerald Hill, Executive Director [email and phone number]." At the bottom of the form was the following printed paragraph,

> I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund ongoing programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation.

On January 12, 2009, Kyle Partners paid $500,000 of the pledge to the Foundation. Kyle Partners' position is that it did not pay the pledge in full because Whitney Bank had stopped supplying funding to Kyle Partners. Kyle Partners did not pay any additional amount in connection with the pledge. The Seton Hospital in Kyle opened in October 2009, and the grand entrance and lobby have yet to be named.

Whitney Bank contends that, in August 2009, the value of the Property was less than the outstanding amount owed to Whitney Bank. The bank stopped advancing funds to Kyle Partners and did not make the construction loan. As only the commercial retail project's infrastructure was complete, Kyle Partners began selling off tracts of the Property.

In March 2011, Kyle Partners modified and restructured its loan with Whitney Bank. That loan matured on January 2, 2012. Kyle Partners defaulted, and Whitney Bank posted the Property for foreclosure.

To avoid the impending foreclosure sale, Kyle Partners filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court designated Kyle Partners as a "single asset real estate debtor." *See* 11 U.S.C. § 101(51B). Kyle Partners listed Whitney Bank as the only creditor holding a secured claim in the amount of $13,793.058.37 and listed "Seton

Hospital" as a creditor holding an unsecured nonpriority claim, contingent and unliquidated, for a "Pledge" in the amount of $500,000.[5]

Whitney Bank filed a Proof of Claim on January 4, 2013, and Seton Hospital filed a Proof of Claim on December 18, 2012, which it amended on January 15, 2013.

**Reorganization Plan and Whitney Bank's Objection to Seton Hospital's Proof of Claim**

Kyle Partners filed a Proposed Amended Chapter 11 Plan of Reorganization (the "Proposed Amended Plan") that the bankruptcy court approved on January 22, 2013.[6] The court established February 25, 2013, as the deadline for creditors to vote to accept or reject the plan and to file any objections to the plan.

The Proposed Amended Plan included six classes of claims. Whitney Bank's secured claim was the only Class III secured claim against Kyle Partners. Whitney Bank raised several objections and voted to reject the Proposed Amended Plan. *See* 11 U.S.C. § 1129(a)(8) (court shall confirm the plan only if all requirements are met; (a)(8) requires each class of creditors to accept the plan or determine each class is not impaired under the plan). Due to Whitney Bank's rejection vote, Kyle Partners requested that the bankruptcy court proceed to confirm the Proposed Amended Plan by finding that a cramdown of Whitney Bank's secured claim is appropriate. *See id.* at § 1129(b) (if all applicable requirements other than (a)(8) are met, court shall confirm the plan notwithstanding the (a)(8) requirement if the plan does not discriminate unfairly, and is fair and equitable, "with respect to each class of claims or interests that is impaired under, and has not accepted, the plan").

---

[5] Kyle Partners listed other unsecured claims that totaled $6,464.06.

[6] Kyle Partners filed an original Chapter 11 Plan of Reorganization and proposed Disclosure Statement on November 29, 2012.

On April 3, the day before the plan-confirmation hearing, Kyle Partners filed a First Modification to the Proposed Amended Plan that modified treatment of Whitney Bank's secured claim and altered the treatment of the Seton Hospital claim to provide for payments to Seton Hospital totaling $250,000 during 16 quarters, with the balance payable after Whitney Bank is paid in full.

The bankruptcy court conducted a contested-plan confirmation hearing on April 4 and 16. On April 8, Kyle Partners filed a Second Modification to the Proposed Amended Plan that again altered treatment of Whitney Bank's secured claim. On April 16, 2013, just before the confirmation hearing reconvened, Kyle Partners filed an Amended Second Modification to Proposed Amended Plan that proposed another modification to the treatment of Whitney Bank's secured claim. At the April 16 hearing, Whitney Bank objected to the Proposed Second Modification to the Proposed Amended Plan and filed a written objection to the Seton Hospital proof of claim. Whitney Bank also objected to Seton Hospital's vote in favor of the Proposed Amended Plan, arguing that the vote should be disregarded because as a matter of law, Seton Hospital is not a qualified creditor entitled to vote on the plan.

On April 25, 2013, Kyle Partners filed a Second Amended Second Modification to Proposed Amended Plan of Reorganization. On June 14, 2013, the bankruptcy court rendered a lengthy Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions. The bankruptcy court determined that it was necessary to cramdown Whitney Bank's secured claim. The opinion did not address Whitney Bank's challenge to the merits of Seton Hospital's proof of claim—that issue would be addressed by the bankruptcy court later—but the bankruptcy court ruled,

6

"Seton Hospital held an 'allowed claim' under [] the Bankruptcy Code at the time of Plan voting and therefore was entitled to vote on the Plan."

On June 28, 2013, Kyle Partners filed a Second Amended and Modified Plan (the "Plan") that the bankruptcy court confirmed on July 1, 2013, by rendition of the Confirmation Order. Whitney Bank appeals, raising several arguments that the bankruptcy court erred in rendering the Confirmation Order.

On August 29, 2013, the bankruptcy court held a hearing on Whitney Bank's objection to Seton Hospital's proof of claim. On October 25, 2013, the bankruptcy court made extensive findings of fact and conclusions of law on the record in open court and rendered a written order denying Whitney Bank's objection to Seton Hospital's proof of claim. Whitney Bank also appeals the bankruptcy court's denial of its objection to Seton Hospital's proof of claim.

## II. Jurisdiction

The bankruptcy court's Confirmation Order is a final, appealable order over which this court has appellate jurisdiction. *See* 28 U.S.C. § 158(a)(1); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002). Additionally, the bankruptcy court's Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals rendered October 25, 2013, is also a final, appealable order over which this court has appellate jurisdiction. *See Moody v. Empire Life Ins. Co. (In re Moody)*, 849 F.2d 902, 904 (5th Cir. 1988).

## III. Standard of Review

On appeal this court may affirm, modify, or reverse the bankruptcy court's judgment, order, or decree, or remand the matter at issue with instructions to the bankruptcy court to conduct further proceedings. *See* Fed. R. Bankr. 8013. In reviewing a bankruptcy court's decision, the court

7

functions as an appellate court, applying the standards of review generally applied in federal appeals: a bankruptcy court's findings of fact are reviewed for clear error and the court's conclusions of law are reviewed *de novo*. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding is clearly erroneous and reversible only if, based on the entire record, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *Id.* In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *see also Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013).

## IV. Analysis

### Whitney Bank's challenge to order denying objection to Seton Hospital's proof of claim

Whitney Bank contends that the bankruptcy court erred in denying its objection to Seton Hospital's proof of claim because Seton Hospital is neither a creditor nor holder of a claim against Kyle Partners, and because Kyle Partners' pledge to the hospital is not an enforceable contract. Whitney Bank argues that based on the terms of the pledge, lacking is any valid consideration for the pledge and, therefore, the pledge is an unenforceable contract. Additionally, Whitney Bank argues that the entity filing the proof of claim, Seton Hospital, lacks standing to assert the claim because the pledge Kyle Partners made was in favor of Seton Foundation, not Seton Hospital, the entity that filed the proof of claim.

Appellees Kyle Partners and Seton Hospital respond, *inter alia*, that the pledge is an enforceable claim, because it is supported by consideration, and Seton Hospital relied on the pledge to its detriment. Additionally, Kyle Partners and Seton Hospital contend that, despite Seton

8

Hospital's and Seton Foundation's separate corporate identities, for purposes of the pledge, they are essentially the same.

A "creditor" may file a proof of claim in a bankruptcy action. *See* 11 U.S.C. § 501(a). A creditor of the bankruptcy estate is an entity that has a claim against the debtor that arose at the time or before the petition date. 11 U.S.C. § 101(10). A "claim" is a "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* at § 101(5). A bankruptcy court shall allow a claim except if the claim is unenforceable against the debtor under any agreement or applicable law. *Id.* at § 502(b)(1). The filing of a proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Bankr. R. 3001(f). Once filed, a claim is allowed unless an objection is filed. *Id.* at § 502(a). Bankruptcy courts determine the substance and validity of a claim by referring to applicable state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979); *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 529 (5th Cir. 2004). If a claim is enforceable under applicable state law, then a party has a right to payment in bankruptcy.

Here, the bankruptcy court found that Texas law applies, because the pledge was executed in Texas, Kyle Partners, Seton Hospital, and Seton Foundation are Texas entities, and the pledge was to be performed in Texas. None of the parties dispute that Texas law is applicable and governs the issue of whether the pledge is enforceable. This court applies Texas law, under which consideration is "a present exchange bargained for in return for a promise" and "consists of either a benefit to the promisor or a detriment to the promisee." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).

Although Whitney Bank directs the court to the printed paragraph on the pledge form that "affirms that no goods or services were provided to donor in exchange for their contribution," the court also considers the handwritten interlineations by which the parties to the pledge agree that Kyle Partners will have the exclusive right to "nam[e] the grand entrance and lobby" in exchange for the pledge. *See Rouff v. Washington & Lee Univ.*, 48 S.W.2d 483, 488 (Tex. Civ. App.–Galveston 1932, writ ref'd). The court considers the hospital's naming privilege to be consideration for Kyle Partners's pledge. At the same time, Seton Hospital incurred a detriment by reserving the naming rights to its public spaces and waiting on the additional $500,000. Additionally, the bankruptcy record reflects that Whitney Bank was aware and approved of Kyle Partners's pledge and, as part of its loan to Kyle Partners, funded the pledge.

With regard to Whitney Bank's standing argument, Kyle Partners and Seton Hospital rely on testimony at the August 29 hearing, which established that Seton Foundation is the fund-raising arm for the Kyle hospital, and that Seton Hospital is the sole corporate member of Seton Foundation. Further, the pledge form is in the name of "Seton Medical Center Hays, a member of the Seton Family of Hospitals," which supports the position that the two entities are essentially the same. The pledge form includes the names of both Seton entitites. The Seton Hospital proof of claim was signed by Thomas Gallagher, in his capacity as "Executive Vice President and COO" of Seton Hospital. Gerald Hill, who is identified on the pledge form, as the vice president and executive director of Seton Hays Foundation, testified that Seton Hospital and Seton Foundation "are all one and the same." He explained that the pledge has never been assigned by Seton Foundation to Seton Hospital, because such an assignment is unnecessary. Seton Foundations's third restated certificate of formation, which was in effect when the proof of claim was filed, reflects that Seton Foundation

10

was to be operated exclusively for the benefit of "Seton Family of Hospitals." Additionally, the evidence reflects that although the face of the pledge states that it is a "Seton Hays Foundation Pledge" and checks should be made payable to the "Foundation," the pledge also includes language referring to the Seton Family of Hospitals.

The court finds that the bankruptcy court's determination that Seton Hospital has standing to assert its proof of claim is not clearly erroneous. Additionally, the court holds that the bankruptcy court's findings of fact related to the denial of Whitney Bank's objection to Seton Hospital's proof of claim are not clearly erroneous. Also, having reviewed *de novo* the bankruptcy court's conclusions of law regarding Whitney Bank's objection to Seton Hospital's proof of claim, the court concludes that the bankruptcy court did not abuse its discretion in denying Seton Hospital's objection.

**Whitney Bank's challenges to the Confirmation Order**

The Confirmation Order and the bankruptcy court's opinion provide in relevant part that each class of claims has accepted the Plan, is not impaired under the Plan, or is subject to cramdown. The bankruptcy court determined that the Plan complies with the cramdown provisions of Section 1129(b)(2)(A), is fair and equitable as to Whitney Bank, and provides an interest rate of 7% on the bank's secured claim. Additionally, the bankruptcy court approved and allowed a portion of proceeds received by Whitney Bank from Kyle Partners' property sale to Avail Health Care Ventures, LLC, to be credited as prepaid interest at the rate of 7% per annum for the period of May 1, 2013 through December 31, 2013, with the balance to be applied as principal reduction of Whitney Bank's claim. Additionally, the bankruptcy court concluded that the Plan is feasible, and

11

is not likely to be followed by a Chapter 7 liquidation or the need for further financial reorganization of Kyle Partners.  Whitney Bank appeals the order.

The opening paragraph of the bankruptcy court's June 14, 2013 opinion summarizes well the positions of the parties.

> This Chapter 11 single asset real estate case presents a somewhat rare setting–[Kyle Partners'] secured creditor is definitely and vastly oversecured, yet [Kyle Partners'] plan of reorganization contains sizable risk for the secured creditor.  On one side, [Kyle Partners] wants a low cramdown interest rate and the time to finish its ongoing sales of real estate to pay off the secured creditor, and needs to use a limited portion of the sales proceeds to complete the plan.  On the other side, [Whitney Bank] wants to foreclose its liens and take the equity in the real estate now, because it is tired of waiting to be completely paid off in full.  Given these wants and needs, the Court finds it necessary to impose a relatively high cramdown interest rate to confirm the plan and ensure [Whitney Bank] is completely compensated for the risk and delay. In the Court's view, neither party will get all they want, but both will get what they need.

Remaining for resolution are Whitney Bank's contentions that the bankruptcy court erred in confirming the Plan because:  (1) the bankruptcy court improperly modified the Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC, Free an Clear of Liens under Title 11 United States Code section 363(f), rendered December 17, 2012, to reclassify a portion of the net sale proceeds payable to Whitney Bank as "prepaid interest," and to require the balance of the proceeds to be applied to principal under the Plan, because such a modification of the order is barred by *res judicata*; (2) Whitney Bank is not provided with the "indubitable equivalent" of its secured claim under the Plan; (3) the Plan is not feasible and confirmation of the Plan is likely to be followed by

liquidation or need for further financial reorganization of Kyle Partners; and (4) Kyle Partners lacked good faith in proposing the Plan.[7]

### Contention the Plan improperly modified the Avail Sale Order

On December 17, 2013, the bankruptcy court rendered the Order Approving Sale of Real Estate To Avail Healthcare Ventures, LLC Free and Clear of Liens Under 11 U.S.C. § 362(f) ("Avail Sale Order"), which allowed Kyle Partners to sell portion of the Property consisting of a 3.2 acre tract of land to Avail. The Avail Sale Order directed Kyle Partners to pay the proceeds, net only allowable closing costs and commissions, first to 2012 and prorated 2013 property taxes, then to Whitney Bank upon closing without further order of the court. The Avail Sale Order provides that it is a "final and enforceable order immediately upon entry." No appeal was taken from the order. Although the bankruptcy court signed the Avail Sale Order before plan confirmation, the Avail sale closed May 3, 2013, after the Plan confirmation hearing.

The Plan included a provision related to the Avail sale,

> with respect to the pending sale to Avail, [Kyle Partners] will remit the sale proceeds (net of closing costs, taxes and commissions) to Lender [Whitney Bank], provided, however, that a portion of the proceeds paid shall be credited as pre-paid interest (at a rate determined by the Court) for the period May 1, 2013 through

---

[7] Whitney Bank also contends that the bankruptcy court erred in counting the vote of Seton Hospital. Whitney Bank argues that, had the Seton Hospital vote been disregarded, the Plan would not have at least one accepting class of impaired creditors to allow the cramdown plan to be confirmed. See 11 U.S.C. § 1129(a)(10).

This court has determined that Seton Hospital has a valid claim and the bankruptcy court's ruling denying Whitney Banks challenge to Seton Hospital's proof of claim was not clearly erroneous. There is, therefore, at least one accepting class of impaired creditors as required to allow the cramdown plan to be confirmed. In light of the court's ruling, it is unnecessary to address Whitney Bank's two issues challenging the bankruptcy court's counting of Seton Hospital's vote.

December 31, 2013 with the balance to be applied as principal reduction.

Whitney Bank objected at the confirmation hearing and argues here that (1) to require a portion of the net Avail sale proceeds payable to Whitney Bank be applied as "prepaid interest"; and (2) to require the balance of the Avail sale proceeds, after payment of property taxes, to be applied to principal, are impermissible modifications of the final Avail Sale Order and are barred by *res judicata.*

Preclusion of a claim under *res judicata* principles requires Whitney Bank to show that four elements are met: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2004).

The two actions must be based on the same "nucleus of operative facts." *Eubanks v. F.D.I.C.,* 977 F.2d 166, 171 (5th Cir. 1992). Application of the doctrine "has been limited to issues of fact or law necessary to the decision in the prior judgment." *Rhoades v. Penfold,* 694 F.2d 1043, 1048 (5th Cir. 1983). Making a determination of whether the same nucleus of operative facts is present requires that the court analyze "the factual predicate of the claims asserted." *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 330 (5th Cir. 2007) (quoting *Eubanks,* 977 F.2d at 171). In sum, *res judicata* bars the subsequent litigation of claims that have been litigated or should have been raised in an earlier action. *Eubanks,* 977 F.2d at 171.

Here, the court finds no controversy with the first three elements, however, the fourth element—that the same claim or cause of action must be involved in both cases—is not established.

14

To suceed, Whitney Bank must show that how the sale proceeds from the Avail sale would be credited and applied by Whitney Bank was raised, litigated, or decided by the Avail Sale Order. The Avail Sale Order provides that:

> [I]t is appropriate for the net sale proceeds from the sale of the Property to be paid to taxing authorities and any lienholders, in order of priority. . . . [Kyle Partners] (and any title company or closing agent or escrow) are authorized and directed to pay the proceeds (net only of allowable closing costs and commissions as set out in the Contract) from the Sale of the Property first for payment of 2012 and Seller's pro-rated 2013 taxes (if applicable) on the entirety of Lot 6, Block A then to [Kyle Partners]'s secured lender(s) in order of priority upon the Closing.

A bankruptcy court has "jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (citation omitted); *In re Applewood Chair Co.*, 203 F.3d 914, 917 (5th Cir. 2000) (bankruptcy court has "continuing jurisdiction to clarify and/or interpret the intent and effect of its orders rendered in [a] Bankruptcy proceeding"). By its Consolidated Opinion, the bankruptcy court found nothing in the Avail Sale Order that addressed *how* the Avail sale proceeds would be credited or applied by Whitney Bank. Specifically, the bankruptcy court found that the Avail Sale Order addressed only the bankruptcy court's authorization of the sale and to whom sale proceeds will be directed and paid. This court agrees that the Avail Sale Order is silent about how Whitney Bank is to apply the Avail sale proceeds.

Whitney Bank also argued to the bankruptcy court at the confirmation hearing and argues here that how the Avail sale proceeds are to be applied by Whitney Bank to its secured debt *should* have been litigated at the time of Avail Sale Order. In considering this argument, the bankruptcy court determined that the Avail sale was a typical pre-plan sale of real estate, with the focus on getting court authorization for the sale of property and the proceeds from that sale distributed to a

15

secured lender. *See* 11 U.S.C. § 363(f) ("Section 363(f)"). How the proceeds would be applied to the secured lender's portion of the debt would be determined later, as all of Kyle Partners' debts would be reviewed and determined under a reorganization plan. Further, nothing in Section 363(f) requires simultaneous litigation of *how* sale proceeds are to be applied by a creditor.

This court concludes that the bankruptcy court's findings of fact related to Whitney Bank's application of how the Avail sale proceeds would be allocated are not clearly erroneous. Additionally, having reviewed *de novo* the bankruptcy court's conclusions of law regarding the application of the Avail sale proceeds, this court concludes that the bankruptcy court did not abuse its discretion. The court rejects Whitney Bank's contention that the Plan improperly modified the Avail Sale Order in violation of the doctrine of *res judicata*.

> ### Contention the Plan does not provide Whitney Bank with the indubitable equivalent of its secured claim, therefore the Plan's treatment of Whitney Bank's secured claim is not fair and equitable

Whitney Bank contends that the bankruptcy court erred in confirming the Plan, because the Plan fails to provide Whitney Bank with the "indubitable equivalent" of its secured claim. *See* 11 U.S.C. § 1129(b)(2)(A)(iii). Whitney Bank argues that the Plan is speculative at best as it is contingent entirely on undocumented and uncertain future sales of tracts of the Property and is based solely on Kyle Partners' optimism. The treatment of Whitney Bank's claim under the Plan increases the bank's exposure to risk, because Whitney Bank is the party that bears the risk of loss if there is a downturn in the real-estate market. Further, Whitney Bank argues that the Plan allows Kyle Partners to engage in land speculation with Whitney Bank's money.

"The Bankruptcy Code [] does not protect a secured creditor's upside potential; it protects the 'allowed secured claim.' If a creditor were over-secured, it could not demand to keep its

16

collateral rather than be paid in full simply to protect the 'upside potential.'" *In re Pacific Lumber Co.*, 584 F.3d 229, 247 (5th Cir. 2009). The indubitable-equivalent standard requires "both the absence of any reasonable doubt that the secured creditor will receive the payments to which it is entitled, and that the changes forced upon the objecting creditor are 'completely compensatory,' meaning that the objecting creditor is fully compensated for the rights it is giving up." *In re Investment Co. of the Southwest, Inc.*, 341 B.R. 298, 324 (10th Cir. 2006).

Before the bankruptcy court, Kyle Partners argued that the Plan provides Whitney Bank with the indubitable equivalent of its secured claim because, although Kyle Partners would be reserving some proceeds from each of the future Property tract sales, Whitney Bank will remain oversecured, will received a 7% interest rate, and will be paid in full with interest during the 5-year term of the Plan. The bankruptcy court agreed.

By the Consolidated Opinion the bankruptcy court concluded that, based on the evidence presented, there was "beyond a reasonable doubt that Whitney Bank will remain oversecured during the Plan's 5-year term and will remain sufficiently and adequately protected during the life of the Plan." Under the Plan, Whitney Bank retains its liens until a Property tract is sold. Upon a sale, Whitney Bank will receive the net sale proceeds, less an amount reserved by Kyle Partners for taxes, insurance, and an interest reserve. Further, the bankruptcy court determined that there is a

> significant equity cushion between the debt owed to Whitney Bank (according [to] the Bank, currently about $13.8 million) and the value of the remaining Property (about $25 million). Given the appreciating value of the Kyle Property and the minimum sale price restrictions in the Plan, Whitney Bank will remain protected.

Further, the bankruptcy court found that Whitney Bank was "being completely compensated for any rights that might be impacted through the Plan," because Whitney Bank is receiving a 7%

17

interest rate under the Plan, which is higher than the 4% Whitney Bank charges for a loan modification.

This court finds that although the loan terms were modified, the collateral was not altered, and concludes that Whitney Bank has received and will receive under the Plan the indubitable equivalent of its secured claim. The court concludes that it was not clearly erroneous for the bankruptcy court to find that Whitney Bank retains its lien, is oversecured, and that an interest rate of 7% adequately compensates Whitney Bank for not receiving its money immediately. Finally, the court concludes that the bankruptcy court's determination that the Plan provides Whitney Bank the indubitable equivalent of its secured claim is not clearly erroneous. Whitney Bank's contention is overruled.

### *Contention the Plan is not feasible*

Whitney Bank objects to the Plan and argued to the bankruptcy court and argues here that the Plan improperly relies on future, speculative sales of Property tracts and therefore is not feasible.

To obtain confirmation of its reorganization plan, Kyle Partners must show by a preponderance of the evidence that its plan is feasible, meaning that it is "not likely to be followed by the liquidation, or the need for further financial reorganization." 11 U.S.C. 1129(a)(11); *In re Save Our Springs Alliance Inc.*, 632 F.3d 168, 172 (5th Cir. 2011). Though a guarantee of success is not required, the bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet. *See United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 378 (1988). The plan must be workable and have a reasonable likelihood of success. *Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997). Speculative, conjectural, or unrealistic projections by a debtor cannot support a debtor's prediction of future performance. *See*

18

*Save Our Springs*, 632 F.3d at 172; *Matter of Canal Place Ltd. P'ship*, 921 F2d. 569, 579 (5th Cir. 1991). However, "[t]he mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required." *In re Idearc, Inc.*, 423 B.R. 138, 167 (Bankr. N.D. Tex. 2009). The bankruptcy court "need not require a guarantee of success . . ., [o]nly a reasonable assurance of commercial viability is required." *Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997); *see also Briscoe Enters.*, 994 F.2d at 1165-66 (bankruptcy court must find only plan offers "a reasonable probability of success.")

The bankruptcy court evaluated multiple factors in determining the Plan's feasibility. *See Briscoe Enters.*, 994 F.2d at 1166 (considering some but not all six factors in feasibility test is sufficient); *accord Save Our Springs*, 632 F.3d at 176. Based on Kyle Partners' post-bankruptcy-filing sales of over $8 million, the bankruptcy court concluded that Kyle Partners has sufficiently demonstrated its ability to sell portioned tracts of the Property. *See Canal Place Ltd.*, 921 F.2d at 579 ("Debtor's prior performance is probative of the feasibility of any plan of reorganization"). These sales reduced the Whitney Bank debt from a high of $27.2 million to approximately $13.8 million. The bankruptcy court also heard credible expert testimony that the remaining Property will likely increase in value over the next five years. Additionally, both parties' experts testified that they expect all of the Property tracts to be sold within four years or less, which would be before the Plan's expiration in five years. Having considered Kyle Partners' past and recent sales performance, credible sales projections, the income-producing incentive agreements, and management, the bankruptcy court concluded that Kyle Partners could realistically carry out the Plan without the liklihood of liquidation or further reorganization.

19

This court reviews the bankruptcy court's findings about plan feasability for clear error. *Save Our Springs*, 632 F.3d at 172. The court finds sufficient evidence to support the bankruptcy court's finding that there is a reasonable probability that the Plan will be successful and further that the bankruptcy court's feasibility determination is not clearly erroneous. The court overrules Whitney Bank's contention and affirms the bankruptcy court's finding that the Plan is feasible.

### Contention that Kyle Partners lacked good faith in proposing the Plan

Finally, Whitney Bank objected in the bankruptcy court and contends here that Kyle Partners lacked good faith in proposing the Plan. *See* 11 U.S.C. § 1129(a)(3). To meet the good-faith requirement Kyle Partners must show by a preponderance of the evidence that (1) it proposed the Plan with the legitimate and honest purpose to reorganize; and (2) that the Plan has a reasonable hope of success. *Briscoe Enters.*, 994 F.2d at 1165; *T-H New Orleans*, 116 F.3d at 802. The good-faith requirement is to be "viewed in the light of the totality of the surrounding establishment of a Chapter 11 plan" and a court must keep in mind that the purpose of the Bankruptcy Code is "to give debtors a reasonable opportunity to make a fresh start." *Id.*

By the Consolidated Opinion and Confirmation Order the bankruptcy court found that the Plan was proposed by Kyle Partners in good faith. After a thorough review of the Plan, the bankruptcy court determined that Kyle Partners has substantial equity in the remaining Property tracts. This considerable equity served as an incentive for Kyle Partners to propose a plan with the legitimate purpose to reorganize, sell the remaining Property tracts, and pay off its creditors, including Whitney Bank, in full.

The bankruptcy court is "in the best position to assess the good faith of the parties' proposals." *Jasik v. Conrad (In re Jasik)*, 727 F.2d 1379, 1383 (5th Cir. 1984). Deference to the

20

bankruptcy court's findings is "particularly important" on the factual question of a party's motivation. *Save Our Springs*, 632 F.3d at 175.

This court concludes the bankruptcy court's finding that Kyle Partners proposed the Plan in good faith is supported by sufficient evidence and the finding is not clearly erroneous. The court overrules Whitney Bank's contention that Kyle Partners lacked good faith in proposing the Plan.

### V. Conclusion

Having addressed Whitney Bank's contentions, the court concludes that the bankruptcy court's findings of fact related to the denial of Whitney Bank's objection to Seton Hospital's proof of claim are not clearly erroneous. Additionally, having reviewed *de novo* the bankruptcy court's conclusions of law regarding Seton Hospital's claim the court concludes that the bankruptcy court did not abuse its discretion in denying the objection. Further, having addressed Whitney Bank's challenges to the Plan, the court concludes that the bankruptcy court's findings of fact are not clearly erroneous and, having reviewed the bankruptcy court's conclusions of law regarding the Plan *de novo*, the court concludes that the bankruptcy court did not abuse its discretion in confirming the Plan.

**IT IS ORDERED** that the bankruptcy court's Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals signed October 25, 2013 is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Order Confirming [Kyle Partners'] Second Amended Plan of Reorganization Under Chapter 11, Title 11, United States Code signed July 1, 2013 is **AFFIRMED**.

SIGNED this ____*19th*____ day of September, 2014.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

22